IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DALE P. PREY,                      :

      Plaintiff              :          Civil Action 2:08-cv-287

  v.                               :          Judge Graham

TAMMY R. KRUSE, *et al.*,          :          Magistrate Judge Abel

      Defendants.            :

**ORDER**

This matter is before the Court pursuant to the Motions of Defendants Robert Kruse and Tammy Kruse to dismiss (Docs. 8, 9). Defendant Robert Kruse moves to dismiss pursuant to Fed. Rs. Civ. Pro. 12(b)(2) and 12(b)(6) (Doc. 8.). Defendant Tammy Kruse moves to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) (Doc. 9.). For the reasons set forth herein, both Motions be **GRANTED IN PART** and **DENIED IN PART**.

<u>Factual Background</u>

The following allegations are taken from Plaintiff's complaint. Plaintiff, proceeding *pro se*, states in his complaint from approximately 2001 through 2007, he and Defendant Tammy Kruse (neé Tammy Tracy or Tammy McGrath) were involved in a romantic relationship. Tammy Kruse was at the time a student at

1

West Liberty State College, in West Liberty, W. Va; Plaintiff, who was employed at Franciscan University of Steubenville, supported her. The couple lived in Steubenville, and made extensive improvements to their home. However, Tammy Kruse expressed her wish to move to the country. After an extensive search, the couple located a parcel in Cadiz, Ohio, a considerable distance from Plaintiff's workplace. Tammy Kruse chose the property and represented that she wished to make their home there. In approximately October 2006, Plaintiff and Tammy Kruse jointly purchased the property. They began construction of a new home there, planning to use their former residence in Steubenville as a rental property.

On or around February 28, 2007, however, Defendant Tammy Kruse left Plaintiff a note stating that she was terminating their romantic relationship and moving out. Two weeks later, on or around March 12, 2007, she married one of her professors at West Liberty, Defendant Robert Kruse. While Tammy Kruse initially informed Plaintiff that he did not need to move out of the Steubenville residence, she and her new husband eventually forced him to leave, and he removed to the unfinished home in Cadiz.

## Personal Jurisdiction

Defendant Robert Kruse argues, pursuant to Fed. R. Civ. Pro. 12(b)(2), that this court lacks personal jurisdiction over him, and that he cannot therefore be sued here. A person can be sued in federal court in Ohio if the law of Ohio would permit the exercise of jurisdiction over him, and if the exercise of jurisdiction would not

violate constitutional due process under the Due Process Clause. *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff bears the burden of establishing the existence of jurisdiction, but must make only a *prima facie* showing that personal jurisdiction exists. *Id.* A court will construe the pleadings in a light most favorable to the plaintiff. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

Ohio's "long arm" statute, O.R.C. §2307.382, states in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: [...]
(3) Causing tortious injury by an act or omission in this state; [...]
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state; [...]
(8) Having an interest in, using, or possessing real property in this state; [...]

In the case at bar, Plaintiff alleges, *inter alia*, that:

On, or about August, 2002, Plaintiff purchased 1434 Oak Grove Ave., [Steubenville, Ohio], moving from Wheeling, WV. [...]
Defendant Tammy R. Kruse helped select property and shared residence (initially part-time - full time for last few years), until she moved out on, or about 28 February, 2007.
[...]
On, or about February 28, 2007 Defendant Tammy R. Kruse, abruptly ended her six year relationship with Plaintiff, by leaving a short note stating she had moved out, would be in contact about the disposition of their shared personal and real property and that she intended to start dating. Subsequently, within two weeks, she moved in with, and married (on, or about 12 March, 2007), her Professor from West Liberty State College, Defendant Dr. Robert Kruse.
Defendant Tammy R. Kruse first revealed the nature and extent of her relationship with Defendant Dr. Robert Kruse in a short e-mail to Plaintiff, on March 22, 2007. This e-mail told the Plaintiff that he did

> not need to move out of the home he (Plaintiff) and Tammy had shared for the last few years, and that "their" lawyers would be in contact - the "their" was explained only in the signature line "Dr. and Mrs. Robert and Tammy Kruse."

(Doc. 2 at 6-8.)

Plaintiff alleges further that, notwithstanding Tammy Kruse's representations that he did not need to move from the couple's home, he was eventually evicted from the Steubenville residence and forced to relocate by the Kruses to an unfinished house located on property outside Cadiz, Ohio which he and Tammy Kruse had been developing. (Doc. 2 at 10.) This eviction, Plaintiff's subsequent removal to Cadiz, and the damages he suffered by this move and by having been induced to acquire the Cadiz property at all, appear to be the chief legally cognizable harms visited upon him by the actions described in his complaint. The *locus* of Plaintiff's tortious injury, therefore, contrary to movant's argument, is in Ohio, where his purchase of property, eviction, and relocation took place. This satisfies O.R.C. §2307.232(A)(3) and/or (6).

A second connection exists between Defendant Robert Kruse, aside from Plaintiff's claim that Robert Kruse participated in a scheme to injure him in Ohio. O.R.C. §2103.02 provides that a husband possesses a dower interest in any real property which his wife may own in Ohio. Plaintiff has pled that Tammy Kruse owned property in Ohio, and that she married Robert Kruse. This is the property from which Plaintiff was evicted, giving rise to his claims. Therefore, O.R.C. §2307.232(A)(8) is also satisfied with respect to Defendant Robert Kruse.

4

The exercise of personal jurisdiction over this defendant, however, must also comport with constitutional standards of due process. Specific jurisdiction over a defendant exists where:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

Defendant Robert Kruse did, if the pleadings are construed in a light most favorable to Plaintiff, purposefully avail himself of the privilege of causing a consequence in Ohio, by acquiring an interest in real property in Ohio, purportedly participating in a conspiracy to defraud an Ohioan, and, as a part of that alleged conspiracy, participating in the eviction of Plaintiff from the Ohio property in which Robert Kruse had an interest. The cause of action against him (conspiracy to commit a fraud) arises out of the ownership, use, and control of Ohio property. Furthermore, the consequences allegedly caused by Robert Kruse – the deprivation of Plaintiff's original home in Steubenville and his removal to other property in Cadiz – have a substantial enough connection with Ohio to make the exercise of jurisdiction over Robert Kruse reasonable.[1]

---

[1] The Court does not address the contacts which Plaintiff alleges exist between Defendant Robert Kruse and Ohio arising out of Robert Kruse's employment with Liberty State College, because, as addressed below, the sole claim upon which relief can be granted to Plaintiff against Robert Kruse is essentially

The Court observes that, as set forth below, it is unclear whether Plaintiff actually states a claim for fraud against Tammy Kruse, and whether he thereby actually states a claim for conspiracy to commit fraud against Robert Kruse. Therefore, the Court concludes that the exercise of personal jurisdiction over Defendant Robert Kruse would satisfy the requirements of Ohio's long-arm statute, and that it would comport with constitutional standards of due process, but that if it should later determine that Plaintiff does not actually state fraud claims, it will find at that time that personal jurisdiction does not exist.

## Legal Standard For Fed. R. 12(b)(6)

The United States Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). The United States Court of Appeals for the Sixth Circuit explains:

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th

---

unrelated to that employment.

Cir. 2007).

The claims must, under the *Twombly* standard, be plausible and not merely conceivable. *Twombly*, 127 S. Ct. at 1974. With regard to the previous standard set forth in *Conley v. Gibson,* the Sixth Circuit explained:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548.

### Choice of Law

Both movants argue, as a preliminary matter, that the law of West Virginia should be applied to evaluate the merits of Plaintiff's claims. Robert Kruse notes that he is a resident of West Virginia, is a professor at a public college in West Virginia, is alleged to have seduced and married Tammy Kruse in West Virginia, and participated in the filing of a domestic violence petition in West Virginia. He argues that the essence of Plaintiff's claims against him deal with events which took place in West Virginia or with actions which he took in the course of his occupation as a professor in West Virginia. Therefore, he claims, West Virginia has a more significant relationship to this matter than Ohio. Tammy Kruse raises essentially the same argument.

The traditional rule for choice of law in tort cases was that the *lex loci delicti*

7

should apply. However, the Ohio Supreme Court has in recent years articulated a more complicated choice of law analysis:

> [T]he traditional rule of lex loci delicti is still viable in Ohio, but is no longer used to automatically determine the prevailing state law. Other interests of the states involved within the controversy must be thoroughly analyzed. Thus, the query becomes what specific factors should [courts] consider in making an equitable choice-of-law determination.
> [...]
> [T]he law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider [...] (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 [of the Restatement (Second) of the Law of Conflict of Laws] which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.

*Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-342 (1984).

Furthermore, where an action is for breach of contract, the general rule in Ohio is that the law of the state where the contract is to be performed governs. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438 (1983). However, a court can also take into account the place where the contract was formed, the place where it was negotiated, the location of the subject matter of the contract, and the domicile of the parties thereto. *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 286 (1984).

As addressed below, Plaintiff does not plead a cause of action for alienation of affection, because no such tort exists at Ohio law (or under the law of West

8

Virginia). Plaintiff's action is, instead, for fraud and for the breach of oral contracts. The essence of his case is that he suffered financial and other injury as a result of having relied upon Defendant Tammy Kruse's misrepresentations that she intended to set up a household with him in Ohio, that Defendant Robert Kruse conspired with Tammy Kruse to defraud him, and that Tammy Kruse breached oral contracts relating to the purchase and establishment of such a homestead.

As such, it is clear that Ohio has the strongest relationship to this case. With respect to allegations of fraud and conspiracy to defraud, it is apparent that Plaintiff's financial loss was suffered in Ohio, that he dwells here, that he dwelt here together with Tammy Kruse, and that both the property which he gave up in Steubenville and that which he alleges he was tricked into buying in Cadiz are located here. With respect to Plaintiff's allegations that Defendant Tammy Kruse breached oral contracts to develop real property in Ohio, such contracts, if they existed, were clearly created in the parties' residency state of Ohio and concerned real property located in Ohio. Therefore, this court will apply the law of Ohio in its analysis of this matter.

### Alienation of Affection

The parties appear to be in agreement that the tort of alienation of affection has been abrogated in Ohio by statute. O.R.C. §2305.29 provides that:

> No person shall be liable in civil damages for any breach of a promise
> to marry, alienation of affections, or criminal conversation, and no
> person shall be liable in civil damages for seduction of any person

> eighteen years of age or older who is not incompetent, as defined in section 2111.01 of the Revised Code.

It is not therefore in dispute that Plaintiff's complaint does not state an actionable claim for alienation of affection.

## Fraud and Conspiracy to Commit Fraud (Claims ##1, 5)

Under Ohio law, the elements of a cause of action for fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69 (1986).

Ohio also recognizes the tort of civil conspiracy. Its elements are: (1) a malicious combination of two or more persons; (2) resulting in injury to person or property; and (3) the existence of an unlawful act independent of the conspiracy. *Universal Coal, Inc. v. New York City Transit Authority, Inc.*, 90 Ohio App.3d 284, 292 (Ohio App. 1993). It has been succinctly defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995).

10

In his Complaint, Plaintiff makes various allegations of wrongdoing on the part of Tammy Kruse. He states that he provided significant "economic, emotional and intellectual support" during her college education, paid for all utilities at their shared dwelling, was induced by her to significantly remodel their home in Steubenville, and was induced by her in October 2006 to purchase land for and construct a joint home in Cadiz. He alleges that he did all these things in justifiable reliance upon her repeated claims that their relationship would continue indefinitely, but that, on February 28, 2007, she abruptly ended their relationship, and that, two weeks later, she married Defendant Robert Kruse.

Under Ohio law, a claim of fraudulent misrepresentation (which has the same elements as fraud) must be predicated on past or existing facts, not on promises or representations relating to future actions or conduct. *Williams v. Edwards*, 129 Ohio App.3d 116, 124 (Ohio App. 1998). Therefore, it is not actionable fraud *per se* to state that one will remain in a relationship and then change one's mind. However, a representation relating to future conduct constitutes an actionable fraudulent misrepresentation where an individual makes a promise concerning future conduct and, at the time she makes it, has no intention of keeping the promise. *Id.*

Defendants both argue, as a general attack on several of Plaintiff's claims, that he is merely trying to state under other guises a cause of action for alienation of affections. (Doc. 8 at 5; Doc. 9 at 5.) They state that, as no damages are permitted under Ohio law for breach of a promise to marry or for alienation of

11

affections, this court should dismiss claims which are essentially attempts to bring an amatory action. "For example, calling Plaintiff's relationship with Tammy Kruse a contractual relationship does not change the fact that Plaintiff's claims seek to hold Mrs. Kruse liable for dissolving their relationship." (Doc. 9 at 6.)

The Court notes, however, that while there is in Ohio no cause of action for breach of a promise to marry, actions for damages incurred *in reliance upon a belief that the parties would be married* can be maintained. For example, a plaintiff groom left at the altar cannot sue a defendant bride for failing to marry him. He can, however, sue her to recover the cost of a church rented and a cake purchased in reliance upon the bride's representation that she would marry him. *See, e.g., Dixon v. Smith*, 119 Ohio App.3d 308 (Ohio App. 1997); *Wilson v. Dabo*, 10 Ohio App.3d 169 (Ohio App. 1983). Here, Plaintiff alleges, *inter alia*, that Defendant induced him to participate in a scheme to develop property by representing that it would become their home. The fact that an alleged fraud takes place in the context of an alienated affection does not mean that it is barred as a matter of law.

The Ohio Supreme Court held in *Strock v. Pressnell*, 38 Ohio St.3d 207, 217 (1988) that "[b]ecause R.C. 2305.29 abolished the torts of alienation of affections and criminal conversation, any legal right that a spouse may have had under these common-law actions has been abrogated and, thus, there can be no violation of a nonexistent right. Therefore, [Defendant] is not liable for breach of fiduciary duty, fraud, misrepresentation, or nondisclosure." *Id.* However, the injury alleged in *Pressnell*, unlike Plaintiff's fraud claims here, was simply the loss of the

12

relationship itself. O.R.C. §2305.29 does not bar a claim for fraud merely because the fraudulent misrepresentation involves a romantic relationship. *Turner v. Shavers*, 96 Ohio App.3d 769, 772 (Ohio App. 1994).

In this case, Plaintiff has pled that Tammy Kruse misrepresented to him that she intended to continue her relationship with Plaintiff, that he reasonably relied upon this representation in participating with her in the purchase of new property in Cadiz to develop as a home, and that he suffered some kind of financial loss thereby. However, it is not clear from Plaintiff's complaint whether Tammy Kruse's alleged misrepresentation was about a present fact or a future fact. He pleads that he and Tammy Kruse jointly purchased the Cadiz property in October 2006.[2] However, he does not plead when the relationship of Tammy Kruse and Robert Kruse began. Absent such a statement, it is not clear whether statements made by Tammy Kruse in October 2006 about purchasing and establishing the Cadiz home concerned present facts or not. Allegations of fraud must be pled with specificity. Fed. R. Civ. Pro. 9(b).

In Claim #5 of his Complaint (Doc. 2 at 15), he explicitly claims that Robert Kruse conspired with Tammy Kruse to conceal what was going on, in order to facilitate her plan to defraud him. Once again, as it is not clear whether Plaintiff has pled the underlying tort of fraud, it is not clear whether Plaintiff states a claim against Tammy and Robert Kruse for civil conspiracy to commit fraud.

---

[2] Plaintiff actually states a date of "October, 2007", but this is apparently a typographical error. (Doc. 2 at 9.)

### Breach of Contract (Claim #2)

Plaintiff claims that Defendant Tammy Kruse breached "a series of implied and oral contracts, made between her and Plaintiff", including an agreement to develop certain land in Cadiz, Ohio, agreements concerning the moving of personal property from their home in Steubenville to the property in Cadiz, and agreements to convert their Steubenville home into a rental property. Defendant makes no argument that this fails to state a claim, except to aver that Plaintiff "has enjoyed the benefits of whatever breach occurred" and that Plaintiff fails to allege conversion.[3] (Doc. 9 at 6.) Moreover, Defendant asserts again that Plaintiff's allegations are merely a claim for alienation of affection. (Doc. 9 at 5-6.)

Contrary to Defendant's assertions, Plaintiff does not merely allege damages resulting from the dissolution of a romantic relationship. In the abstract, Plaintiff's allegation would still assert a cause of action for breach of contracts to develop real estate, whatever the relationship of the contractual parties. The terms of those contracts, and the precise damages Plaintiff has suffered, are not expressed with crystalline clarity. However, Plaintiff has satisfied his obligation under Fed. R. Civ. Pro. 8(a)(2) to make a "short and plain statement of the claim showing that the

---

[3] In response to Defendants' assertion that he has enjoyed the benefits of the breach, Plaintiff has referred the Court to the allegation in his complaint that he has been forced by Defendant Tammy Kruse's breach to move to an unfinished rural house without running water, permanent electric supply, or septic system, forty-five minutes' commute from his place of employment. (Doc. 2 at 10.)

14

pleader is entitled to relief", and has stated a claim for breach of contract.

### Intentional Infliction of Emotional Distress (Claim #3)

Ohio recognizes the tort of intentional infliction of emotional distress. In order to establish such a claim, a claim must demonstrate:

> (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental distress suffered by the plaintiff was serious.

*Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 142 (Ohio App. 1995).

The standard for succesfully pleading a cause of action for intentional infliction of emotional distress is quite high. The acts concerned must, by their nature, go so far beyond all possible bounds of decency as to be considered atrocious and utterly intolerable in a civilized community. *Bryans v. English Nanny and Governess School, Inc.*, 117 Ohio App.3d 303, 318 (Ohio App. 1996). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375. The conduct must be such that, if it were described to an average member of the community, would "arose his resentment against the actor, and lead him to exclaim, 'Outrageous!'". *Id.*

This tort, when approached in the context of a motion to dismiss for failure to state a claim, peculiarly places the burden upon the court to make an initial

15

assessment of whether, as a matter of law, the conduct alleged is sufficiently outrageous. Here, Plaintiff's allegations against Defendant, if taken as literally true, would describe dishonest, harmful, and meretricious conduct. However, they do not allege conduct so outrageous that an ordinary person would be shocked to hear of it. Therefore, the court does not find that Plaintiff alleges "extreme and outrageous" conduct sufficient to plead a claim for intentional inflict of emotional distress.

## Malicious Civil Prosecution (Claim #4)

"Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144 (1990). Ohio law thus recognizes the tort of malicious civil prosecution. Its elements are (1) malicious institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 297 (1994), citing *Crawford v. Euclid Nat'l Bank*, 19 Ohio St.3d 135, 139 (1985). *See also Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 269-270 (1996).

In the case at bar, Plaintiff has made a colorable claim that Defendants maliciously instituted prior proceedings against him, by obtaining a restraining

order in the domestic relations courts of Ohio County, West Virginia. He has made a colorable claim that there was a lack of probable cause for the filing of this action. It is is not clear whether he has made a colorable claim that his "person" was seized by Defendants' obtaining of a restraining order against him. However, the restraining order, which is not in evidence, apparently imposed a restriction upon his movements. Such a restriction could arguably constitute a "seizure".

However, before a suit for malicious civil prosecution can go forward, the underlying action must have terminated in the plaintiff's favor. Ohio courts have held that, where a party voluntarily dismisses his action, this will not constitute an adjudication in the plaintiff's favor for purposes of an action for malicious prosecution. *See., e.g., Starinki v. Pace*, 81 Ohio App.3d 113, 115 (1991). Here, Plaintiff states that Defendant voluntarily moved for the dismissal of the restraining order, and did not otherwise pursue her suit. Therefore, there was no termination of the domestic violence action in Plaintiff's favor. Plaintiff has thus not stated an actionable claim for malicious civil prosecution.

### Educational Contract and Defamation Claims (Claims ##6, 7, 8, 9, 10)

Plaintiff alleges in addition a closely related set of claims involving Defendant Robert Kruse's employment at Liberty State College and his position as Tammy Kruse's professor. He frames these as abuse of authority, breach of his contractual obligation to maintain a disinterested relationship with a student, violation of West Liberty State College's sexual harassment policy, conspiracy with

17

his colleages at West Liberty State College to conceal his relationship with Tammy Kruse, and defamation.

Defendants argue, correctly, that these allegations fail to state claims upon which relief can be granted. Plaintiff's claims for abuse of authority (#6) and conspiracy with his colleagues (#9) are essentially that Robert Kruse used his position to seduce Tammy Kruse, depriving him of his romantic relationship. These are statutorily barred claims for alienation of affections, because the harm he alleges is the loss of Tammy herself. He alleges that Robert Kruse breached his obligations as a professor by entering into an inappropriate relationship with his student, Tammy Kruse (##7, 8). Whether or not this is true, Plaintiff has no standing to claim breach of a contract to which he was not a party or third-party beneficiary, or to claim sexual harassment where he was not harassed. Plaintiff further alleges that Defendants slandered him by making false accusations against him in court (#10). Under Ohio law, "a statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceedings in which it appears." *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986). Plaintiff's defamation claim is thus barred.

## Conclusions

For the foregoing reasons, it is hereby **ORDERED** that the May 23, 2008 motions of Defendants Robert Kruse and Tammy Kruse to Dismiss (Docs. 8, 9) be

18

**GRANTED IN PART** and **DENIED IN PART**. This court has personal jurisdiction over Defendant Robert Kruse, assuming that Plaintiff states a claim in tort against him. Plaintiff's allegations aside from those for breach of contract, fraud, and conspiracy fail to state claims upon which this court can grant relief. Plaintiff has stated a cause of action against Defendant Tammy Kruse for breach of contract.

However, due to a lack of specificity, it is unclear whether Plaintiff has stated a cause of action for fraud against Tammy Kruse and for conspiracy against Tammy Kruse and Robert Kruse. Plaintiff therefore **SHALL HAVE** until **March 6, 2009** to file an amended complaint setting forth his allegations of fraud and conspiracy with greater specificity. Furthermore, 28 U.S.C. §1332 grants the federal district courts subject matter jurisdiction over suits between persons of different states only where the amount in controversy exceeds $75,000. Plaintiff is required, in his amended complaint, to make a showing that his damages in this matter exceed $75,000. Otherwise, the Court must, under Fed. R. Civ. Pro. 12(h)(3), dismiss an action which it has determined that it does not have the jurisdiction to hear.

Plaintiff has also filed a motion for leave to amend his complaint to join West Liberty State College and John Gompers as defendants. As it appears that the proposed amendment would relate only to claims which are dismissed, it is further **ORDERED** that Plaintiff's motion for leave to amend (Doc. 30) be **DENIED**.

                                            s/James L. Graham
                                            United States District Judge

Date: February 19, 2009