IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Dale P. Prey, | : | |
| Plaintiff | : | Civil Action 2:08-cv-287 |
| v. | : | Judge Graham |
| Tammy R. Kruse, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# ORDER

This matter is before the Court on defendant Tammy R. Kruse's April 3, 2009 motion for summary judgment (doc. 51). Following the Court's June 9, 2009 Order, only plaintiff's claims for breach of contract and unjust enrichment against defendant Tammy Kruse remain.[1]

As a preliminary matter, plaintiff's March 23, 2009 motion seeking leave of the Court to permit additional discovery beyond the initial discovery deadline (doc. 48) is DENIED. The deadline for completing discovery was January 30, 2009, and plaintiff has not demonstrated good cause for reopening discovery. Plaintiff's July 16, 2009 motion to

---

[1]This Order will not address the parties' arguments with respect to plaintiff's claims for fraud and civil conspiracy as they have already been disposed of by the Court.

1

strike defendant's untimely answer (doc. 68) is also DENIED because defendant's answer was not untimely.

**I. Allegations in the Amended Complaint**

Plaintiff's amended complaint makes the following allegations:[2]

- In June 2006, Prey and Tammy Kruse visit Prey's family in Arizona.

- From October 2006 through November 2006, Tammy Kruse concealed the fact from Prey that she had received the final divorce decree from her previous marriage.

- In mid-October 2006, Prey and Tammy Kruse visited the five acre parcel in Cadiz. Tammy allegedly told Prey, "That's it. This is where I want to build our home."

- October 27, 2006, there was a fire at Tammy Kruse's Weirton apartment and she lost many possessions.

- November 1, 2006, Prey went to the courthouse to place Tammy Kruse's name on the deed to the Oak Grove (Steubenville) property. "Tammy had still lost a big chunk of mementoes, including some of her Grandmother's furniture, etc. Plaintiff wanted to make sure that she was protected, if something happened to him, so she did not lose her home - the home she had picked out and that they had both shared for the last few years. Plaintiff was informed that he could not simply add

---

[2]The paragraphs in the amended complaint (doc. 44) are not numbered.

Tammy's name, unless it was done as a result of marriage, etc. The only way to get her name on the deed was to create a new deed through a sale or gift. He reported his efforts to Tammy . . . ." (p. 8.)

- After October 27, Prey and Tammy Kruse put up a small metal shed on the Cadiz property. Later they put a small wood stove and a set of bunk beds in the shed.

- On Christmas eve, Prey called Tammy Kruse and told her "that he was finally convinced - if this was what she wanted, he was ready to sell the house in Steubenville and move out here." (p. 9.)

- From December 24, 2006 until February 28, 2007, Prey and Tammy Kruse had a number of serious conversations about plans to develop the Cadiz property and to build their home there. They began construction on a temporary cabin. At no time did Tammy Kruse mention Dr. Kruse.

- In January 2007, Prey and Tammy Kruse took a trip to Amish country to look at composting toilets. Tammy Kruse told Prey that Dr. Kruse wanted more than a normal professor-student relationship. She told Prey that she told Dr. Kruse that she was in a relationship and that she could not date him anyway because he was her professor.

- In January 2007, Prey told Tammy Kruse that he had been sued by Citi Group because of a credit card issue and that he would understand if

3

she decided to end their relationship. Tammy Kruse assured him of her commitment to the relationship.

- Sometime in January or early February 2007, Prey and Tammy Kruse jointly decided that the best plan was for her to purchase the Steubenville property from him. "They set a price at a steeply discounted rate, not bothering to include the costs of renovations or appliances, etc. since they would both continue to reside in the house, until they moved to the new home in Cadiz." (p. 12.) Tammy Kruse suggested that they would move expensive appliances to the Cadiz property and keep Oak Grove as a rental property. Prey began paying rent to Tammy Kruse. He also paid the utilities.

- In February 2007, Tammy Kruse told Prey that she was worried that Professor Sheli Bernstein-Goff thought she was having an affair with Dr. Kruse. Tammy Kruse told Prey that she was not having an affair with Dr. Kruse.

- In February 25, 2007, Tammy Kruse told Prey that he lacked empathy and she was considering moving out. She denied being in a relationship with another person. She promised that if she moved out, she was not turning her back on everything that they shared. For instance, she would assist with moving the french doors that were being delivered to the Cadiz property that weekend.

4

- On February 28, 2007, Tammy Kruse left Prey a note saying that she had decided to move out and start dating again.

- On March 8, 2007, Dr. Kruse informed his colleagues that he intended to marry Tammy Kruse.

- Prey and Tammy Kruse both paid one half of the total cost of purchasing the Cadiz property. Both of their names were on the deed.

- After leaving Prey, Tammy Kruse told him she was willing to give the Steubenville house back to him.[3]

- April 30, 2007, Prey moved into the unfinished cabin on the Cadiz property.

Plaintiff itemizes economic damages at page 21 of the amended complaint (doc. 44, page 21 of 23).

## II. Arguments of the Parties
### A. Defendant

---

[3] At the same time plaintiff Prey filed his brief opposing summary judgment, he filed a letter dated May 23, 2007 from "Tammy" to "Dale." There is no affidavit by Prey stating when he received the letter and setting out any communications between him and Kruse following his receipt of the letter.
  In relevant part, the letter states:
  The house is another issue. I did buy the house. I didn't but the house to slip it out from under you. I am willing to sell the house back to you at the same price I bought it from you. Let me know via e-mail by the end of this month (____@____). if you wish to buy the house. As you can see from the transfer of the land into your name, I wish you no harm. If you do not want to buy the house that is fine. It will go up for sale by the end of June 2007.
Doc. 60 (Email address redacted).

5

Defendant argues that Prey cannot demonstrate that there was a bargained for exchange or that he was damaged by a breach. Defendant maintains that Prey cannot show that the parties agreed to certain terms with enough specificity so as to make the contract enforceable. Defendant also maintains that plaintiff is confusing simple plans or goals with a legally binding contracts. Defendant argues that a jury could not possibly determine what exactly Ms. Kruse is alleged to have promised to do.

**B. Plaintiff**

Plaintiff bases his breach of contract claim on three specific areas: (1) his support of Ms. Kruse in her educational pursuits; (2) their agreement to purchase the Cadiz property and to build their home on it; and, (3) their agreement with respect to the Steubenville home.

**III. Summary Judgment**

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

**IV.    Discussion**

**A.  Breach of Contract**

Plaintiff claims that defendant Tammy Kruse breached a series of implied

8

and oral contracts which included an agreement to develop certain land in Cadiz, Ohio, agreements concerning the moving of personal property from their home in Steubenville to the property in Cadiz, and agreements to convert their Steubenville home into a rental property. As this Court has previously noted, the terms of those contracts and the precise damages plaintiff has suffered have not been expressed with crystalline clarity.

In order to prove a claim for a breach of contract, a complaining party must prove the following elements by a preponderance of the evidence: (1) that a contract existed: (2) that the complaining party fulfilled its contractual obligations; (3) that the opposing party failed to fulfill its obligations; and (4) that the complaining party incurred damages as a result of this failure. *Doner v. Snapp*, 98 Ohio App.3d 597, 649 (Ohio App. 2 Dist.,1994.). Under Ohio law, the burden is on plaintiff to demonstrate that the parties agreed to certain terms. *Mortgage Network, Inc. v. Ameribanc Mortgage Lending, L.L.C.* , 177 Ohio App.3d 733, 740 (Ohio App. 10 Dist., 2008)("[T]he party seeking to enforce a contract must prove that a valid contract exists, which means that the party must demonstrate that there was an offer and an acceptance . . . and that the parties' agreement was supported by consideration."). To be enforceable, a contract must "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App. 3d 167, 169 (1983).

Here, plaintiff has not demonstrated that the terms of the contract were specific enough so as to make the contract enforceable. Plaintiff maintains that Tammy Kruse

9

made the offer that formed the contract by her statement that the Cadiz property was where she wanted to build their home. Prey contends that although the offer did not include a specific floor plan, a breakdown of the costs, or the identity of who would perform the work, they understood that they would be building the house themselves and not hiring a contractor to build a "MacHome." Plaintiff maintains that he accepted Tammy Kruse's offer, thereby creating a legally binding contract. Prey contends that both he and Tammy Kruse performed some of their obligations under the contract by setting fence posts, sowing winter rye to improve the soil, setting up an outhouse and storage shed, reviewing house plans, investigating options for heating, electricity, water, and waste disposal, and purchasing lumber for the cabin.

Plaintiff has not come forth with any evidence to support his assertion that a contract existed between him and Tammy Kruse to develop the land in Cadiz, Ohio. Although he indicated in his deposition that he and Tammy Kruse intended to develop the land, he failed to identify any specific contract terms. Although Prey asserts that he and Tammy Kruse agreed to build a house on the property, he did not identify any specific terms with respect to the house that demonstrated the parties entered a legally binding contract. Instead, Prey recites their plans for a future together living on the Cadiz property. He provides no evidence to suggest that the parties intended to be in a legally binding contract to develop the property together in the event that their relationship ended. Quite simply, Prey has failed to meet his burden of offering evidence from which a trier of fact could find by a preponderance that there was a

10

contract between Prey and Tammy Kruse. He has not supported his memorandum in opposition to defendant's summary judgment with any evidence demonstrating the alleged agreement was sufficiently certain to constitute an enforceable contract.

With respect to the house in Steubenville, plaintiff maintains that to find for defendants the Court would have determine that he sold the property to Tammy at a substantial discount, and without regard to his investments of time of money in it, with no other conditions or agreements conditioned on that sale. Prey contends that he is entitled to damages for loss of future rental income based on the agreed upon use of the property as a rental unit. He also believes that he is entitled to compensation for the upgrades and remodeling that he performed. Plaintiff has not come forth with any evidence supporting his claim that Tammy Kruse had a contractual obligation to follow through on their plans. If the parties had intended to have plaintiff retain ownership of the appliances, the contract for the sale of the house should have reflected this. Prey has not provided the Court with the contract, and he has not produced any evidence that shows that Tammy breached the contract for the sale of the house in Steubenville.

### B. Unjust Enrichment

To establish a claim for unjust enrichment, a plaintiff must demonstrate (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d

179, 183 (1984). The theory of unjust enrichment is designed to compensate the plaintiff for the benefit that he has conferred upon another, not to compensate him for a loss suffered. *Jones v. Jones*, 903 N.E.2d 329, 337 (2008). Under Ohio law, a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject. *Lehmkuhl v. ECR Corp.*, No. 06 CA 039, 2008 WL 5104747, at *5 (2008).

The amended complaint and plaintiff Prey's brief focus his unjust enrichment claim on the economic, intellectual, and emotional support he provided Tammy Kruse while they cohabited. Plaintiff argues in his brief opposing summary judgment that he supported Tammy while she pursued her education. As an example, Prey asserts that he spent many hours tutoring Tammy, installed specialized mapping software on his computer, loaded PowerPoint on his computer so she could use it for presentations, and assisted her in preparing graphics. In turn, Prey's brief asserts that Tammy Kruse told him that once she finished her degree it would be her turn to provide support to him. Defendant argues that plaintiff raises the claim of unjust enrichment for the first time in his response in opposition to defendant's motion for summary judgment. The amended complaint states:

> Defendant Tammy R. Kruse helped select the [Steubenville] property and shared residence (initially part-time- full time for last few years), until she moved out on, or about 28 February 2007. While they shared this residence, plaintiff made many improvements to the house including purchasing several appliances, a remodel of the kitchen (completed in the summer of 2006), landscaping (an on-going project) and installation of new high efficiency central heating system and gas fireplace

12

> (January, 2006). At no time, during this period of time, while sharing the residence at 1434 Oak Grove Ave. did Tammy pay rent or utilities. In fact, they enrolled in a "Family Plan" cell phone service, on, or about, December, 2005. Plaintiff purchased both phones and paid all monthly charges for his account.
>
> During this time, period, Tammy was a student at West Liberty State College and Plaintiff provided significant economic, emotional and intellectual support to Tammy in her pursuit of a college degree. Initially, this support was primarily emotional and intellectual–tutoring her in basic math, reviewing and critiquing her writing assignments, accompanying her on excursions to work on mapping projects, etc. However, once she started residing with Plaintiff full time, lost her job at the Howard Long Wellness Center, and was injured in a motor vehicle accident, the level of economic and emotional support increased exponentially. For example, the last day they spent together, 27 February, 2007, Plaintiff took time off from work to accompany Tammy to Pittsburgh for a series of nerve blocks/injections-treatment for her back/neck/shoulder pain. Tammy expressed, several times, as any reasonable person would do, her gratitude for Plaintiff's support and stated that when she earned her degree, it would be her turn to return the favor and to help Plaintiff to pursue his goals.

Am. Compl. at 2-3. In his damages calculation, plaintiff lists "Unjust enrichment - value of support to Tammy in pursuit of degree (based on 5 year, increasing earnings *0.25%)" totaling $27,000. *Id*. at 21. In his response in opposition to defendant's motion for summary judgment, Prey states:

> As a teacher of various college writing classes, as well as speech communication classes, he brought his professional skills to her assistance. He spent many hours tutoring her and helping her in the various stages of the writing process, helping her clarify and organize her thoughts, proof-reading, etc. When her courses required specialized software, he installed it on his computers and accompanied her on her various excursions to compare "ground truth" to what she had mapped. When her courses required a presentation, he loaded PowerPoint on his computer, or worked with her in his office, to help her create quality presentations. Several times, for Dr. Kruse's classes, he assisted her in creating the various graphics around which her final presentations were based,

> ensuring she not only got a good grade, but made an impression on her professor as a bright, dedicated and hard-working student.
>
> Over this time period Tammy received a significant benefit and expressed her appreciation and gratitude, promising that once she finished her degree, it would be her turn to provide support to Plaintiff. Upon her termination of their relationship, she retained all of the benefits and den[ied] Plaintiff any return on the time and energy he invested in furthering her educational goals [which] is a classic situation requiring the Court to step in to avoid injustice and unjust enrichment.

Pl.'s response at 13-14.

The amended complaint does not identify the claims asserted. It does allege a breach of contract. It does not expressly allege an unjust enrichment claim, but the language quoted from above from pages 2-3 of the amended complaint can be read to assert that Tammy Kruse was unjustly enriched by the economic, intellectual, and economic support Prey provided her while they lived together.

Several Ohio courts have considered the application of unjust enrichment in cohabiting relationships. In *Lauper v. Harold*, 23 Ohio App. 3d 168 (Ohio 12th Dist. 1985), the court was "unwilling to recognize a separate status for unmarried persons who are living together" and held that cohabitation without marriage did not afford a party the right to have property or assets divided upon termination of the relationship. The court acknowledged, however, the possibility that one party could become unjustly enriched at the expense of another individual when living together without the benefit of marriage. In *Lauper,* the court concluded that Harold was unjustly enriched to the extent that Lauper made ten monthly payments on the car which Harold still owned. Lauper, however, was not entitled to recover damages for the value of furniture that she sold

when she moved in with Harold or the loss in wages she sustained when she changed jobs to be closer to their new home on the basis that Lauper made these decisions on her accord and with full knowledge of the consequences of her actions. The court noted that the sale of the furniture was made to her daughter at a substantial discount, and the decision to change jobs eliminated a lengthy commute.

In *Tarry v. Stewart*, 98 Ohio App. 3d 533 (Ohio 9th Dist. 1994), the court concluded that Stewart was not unjustly enriched for work on the his home that was completed by Tarry. The court found that both parties contributed time and effort to repairing two properties owned by Stewart. Both parties lived together in one of the residences, and Tarry presumably enjoyed the improvements she made to the house.

In *Stevens v. Stevens*, 23 Ohio St. 3d 115 (1986), the Ohio Supreme Court held that a professional degree was not marital property, but the future value of the degree was an element to be considered in determining an alimony award. The dissent, however, argued that the better approach was to consider a special remedy, "responsive to the contributing spouse's equitable claim to repayment for the 'investment' made in the degreed spouse's education" on the basis of unjust enrichment. *Id.* at 125. No Ohio court appears to have considered this approach in the context of an unmarried couple living together without the benefits of marriage.

Here, plaintiff's unjust enrichment claim confuses the give and take of an intimate personal relationship with an economic relationship giving rise to an equitable legal claim. Much of what plaintiff describes is intellectual and emotional support. The

15

amended complaint does allege that a year or two before their relationship ended Tammy Kruse lost her job and did not contribute funds to their Steubenville residence, but it also alleges that she continued to maintain an apartment of her own in Weirton. Because she maintained her own residence, Kruse was not unjustly enriched. Presumably Prey wanted Kruse to stay with him at his residence so he would be close to his place of employment and still be able to see her frequently. The Court further notes that Prey makes no allegation that he paid for Tammy Kruse's tuition or other similar educational expenses. The Court concludes that the amended complaint fails to state a claim for unjust enrichment regarding the allegation that Prey provided Tammy Kruse with intellectual, emotional and economic support because it not allege that she retained a benefit under circumstances that would be unjust to do so without payment to Dale Prey.

However, the amended complaint could also be read to state a claim that Tammy Kruse was unjustly enriched when Prey sold the Steubenville property to her for a "steeply discounted" price that failed to reflect the value of renovations, new appliances, and other improvements. The calculation of damages attached to the amended complaint alleges that the value of the Oak Grove property was $27,100, but that it was transferred to Tammy Kruse for $12,000. The Court cannot say that as a matter of pleading, the amended complaint fails to allege with respect to the sale of the Steubenville property that (1) Prey conferred a benefit on Kruse, (2) she had knowledge

of that benefit, and (3) retention of the benefit by her was under circumstances where it was unjust for her to do so without payment. *Hambleton*, above, 12 Ohio St.3d at 183.

Neither plaintiff Prey nor defendant Tammy Kruse offered any evidence regarding these three essential elements of an unjust enrichment claim. Defendant did not make any argument, supported by reference to evidence, that plaintiff has no proof of one or more of these essential elements. Plaintiff offered no admissible evidence to demonstrate that he is prepared to offer evidence at trial from which the triers of fact could find each essential element by a preponderance. Accordingly, defendant's motion for summary judgment is DENIED as to the unjust enrichment claim to the extent it alleges that defendant Tammy Kruse was unjustly enriched when plaintiff Prey sold the Oak Grove property to her for substantially less than its true value.

This denial of summary judgment on the unjust enrichment claim based on the sale of the Steubenville property is without prejudice to defendant filing a motion for summary judgment on this unjust enrichment claim within thirty (30) days of the date of this Order. In briefing any such motion, both plaintiff and defendant should set out the admissible evidence of record.[4]

---

[4] Exhibits supporting or opposing summary judgment must be admissible into evidence at trial. Rule 56(e). To create a conflict of fact to defeat a motion for summary judgment "a party cannot rest on the allegations contained in his" pleadings. *First National Bank of Arizona v. Cities Service Company.*, 391 U.S. 253, 259 (1968) (footnote omitted); *Gregg v. Allen-Bradley Company.*, 801 F.2d 859, 861 (6th Cir. 1986); *Reid v. Sears, Roebuck*, 790 F.2d 453, 459 (6th Cir. 1986); *Dresher v. Burt,* 75 Ohio St.3d **, 293 (**); *Myers v. Goodwill Industries of Akron,* 130 O. App. 3d 722, 726 (**1998). Further, a party cannot just assert facts, the "non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and . . . the court is not required to

**V. Conclusion**

For the reasons stated above, defendant Tammy R. Kruse's April 3, 2009 motion for summary judgment (doc. 51) is GRANTED as to all the remaining claims except plaintiff Dale Prey's unjust enrichment claim based on the sale of the Steubenville property. This is the sole remaining claim in the case. All other claims are hereby DISMISSED.

        S/ James L. Graham
        James L. Graham
        United States District Judge

Date: Mar. 29, 2010

---

search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures v. J.P. Structures,* 130 F.3d 1185, 1190 (6th Cir. 1997).

    Affidavits must be "made on personal knowledge" and must "set forth such facts as would be admissible in evidence." Rule 56(e). The affidavit must demonstrate that the affiant is "competent to testify to the matter stated therein." *Id. Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *Gagne v. Northwestern National Ins. Co.,* 881 F.2d 309, 315 (6th Cir. 1989); *Murray v. Thistledown Racing Club,* 770 F.2d 63, 68-69 (6th Cir., 1985). Affidavits based on hearsay, the affiant's opinions, or irrelevant evidence do not satisfy Rule 56(e) and will be disregarded by the court. *Ellis v. Washington County,* 198 F.3d 225, 228-29 (6th Cir.. 1999); *U.S. Structures v. J.P. Structures,* 130 F.3d 1185, 1189 (6th Cir. 1997);*State Mutual Life v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir. 1979).

    However, there is no requirement that the party opposing summary judgment produce his evidence *in a form* admissible in evidence at trial. *Celotex*, 477 U.S. at 324. It is sufficient that the evidence be admissible at trial. Edward Brunet, "Summary Judgment Materials," 147 F.R.D. 647, 547-57 (1993).